Jason, Brent
16190 SW 130th Terrace, Unit 12
Portland, OR 97224
408-930-9503 phone
mrbrentjason@yahoo.com
in pro per

29 SEP '23 16:43 RECVD USDC-ORP

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

Jason, Brent

    Plaintiff,

vs.

Adobe, Inc., and Does 1 - 10

    Defendant(s).

Case Number: 3:23-cv-1432-AN

**Complaint**

Trial by Jury Requested

## Parties

Plaintiff Mr. Brent Jason, is a US citizen, residing in the Portland, OR area.

Defendant Adobe, Inc. is a multinational company formed in California and operating in all 50 states of the United States, including operating an office of over 50 people in the downtown area of Portland, OR.

Respondent(s), Does 1-10, are certain yet to be persons within Adobe or other persons with a nexus to the action.

## Jurisdiction

The court has jurisdiction over the action as provided by case law and other federal statutes, and as Plaintiff resides within the District of Oregon and Defendant(s) actions and natural nature of business occurs in all fifty (50) states.

## Venue

Venue is appropriate as provided by case law and federal statutes.

## Facts

1. Plaintiff was granted a job offer and accepted it from Adobe after Adobe purchased and acquired Marketo, Inc as an attorney, corporate counsel, supporting sales.
2. Prior to Adobe, Plaintiff's work garnered emails recognizing Plaintiff's work came regularly from executives, including the CEO of Marketo, Steve Lucas, and many other executive leaders.
3. Issues at Adobe slowly crept up over the months.
4. First being the culture and the sales team.
5. At the legal team conference, the Wild, Wild, West all hands legal conference held in Denver, Colorado, Adobe released a T-shirt that stated "Yes, starts here" in very large print with a "*Except when it's a definite no.".
6. In their coded discussion of the meaning of the t-shirt, was the legal team was to be supportive in serving the business units with their execution of company objects.
7. What was also discussed in person was legal team members can never directly say "No" to the business units.
8. There were several changes also along the culture, most notably the business clients that Plaintiff served, the Adobe sales team.
9. The Adobe sales team continually would bombard Plaintiff with emails and instant messaging to preclude and interfere with Plaintiff's ability to complete his job duties, including on email chains where sales team members were notified that a decision was required on an escalation for exceptions to usual business practices of Adobe (please note Plaintiff routinely and regularly included sales team members on all escalation emails).
10. Rather than go directly to the escalation point of contact to get them to respond or do a simple search of their email on the status of the escalation, sales team members would contact Plaintiff keeping Plaintiff from focusing on his work.
11. Additionally, the sales team would also continually interrupt Plaintiff's ability to focus on contract negotiation documentation requesting status updates even though Plaintiff had already provided sales team members an estimated response time and such estimated response time had no lapsed yet.

1. Again, rather than searching their emails, sales team members continually bombarded Plaintiff with emails or instant messages that had no pertinent information to assist Plaintiff for completing his tasks and helping the business units.
2. Additionally, Plaintiff's workload was unrealistically high and essentially tripled under Adobe without adequate compensation and less team support than Marketo provided.
3. Marketo had several people supporting its global sales from a legal perspective, including 2 dedicated privacy attorneys.
4. Due to a rising health problems due to an overwhelming workload that could not be managed in an 8-hour work day, including symptoms that resembled a stroke and ulcer type conditions.
5. Plaintiff continually made requests to Adobe management, including Hylan Fenster, Robin Foster and Alex Fuentes about these issues and / or the impact they were having on Plaintiff's ability to work and his health.
6. At a certain point, Plaintiff was driven to the point of breakdown compounded.
7. From all appearances, none of these Adobe managers did anything to assist.
8. No sales team wide emails or even individual emails were sent to any sales team members or sales team managers or legal managers was ever sent, nor any calls arranged with Plaintiff and sales team members and managers.
9. At a certain point, around September of 2020 Plaintiff interrupted a meeting to discuss the working situation impacts and the impacts of the civil unrest occurring across the country on his overall health and wellbeing and the wellbeing of his family and the inability to continue living and working in Denver, CO seeing the continually out of town agitators over the years in Patriot Prayer and Proud Boys.  (Please note Plaintiff having family in the area was well aware the malice and criminal acts these groups were committing much earlier than most of the nation discovered the Proud Boys, when members stalked, jumped and hospitalized a man outside a restaurant in Portland in the late evening.)
10. Along with this, around the same September of 2020 time frame, Plaintiff disclosed his attention deficit diagnosis to Adobe legal management and HR, which is a federal recognized and protected under the Americans with Disabilities Act, along with a host of other ailments including stroke like symptoms from the incredulous working hours Plaintiff was required to

support (often 60 to 80 hours Monday through Friday, starting anywhere from 7 am in the morning and ending past midnight).

Adobe forced Plaintiff into an FMLA leave and reluctantly allowed Plaintiff to relocate to Portland, OR under the requirement that Plaintiff return to Denver or Lehi / Salt Lake City to work in and report to an office environment on a daily basis after the COVID lockdown had subsided, which Plaintiff agreed.

Plaintiff was essentially treated different than other employees in the legal team under this circumstance.

Some legal team members prior to the pandemic were already working remotely and not required to go into an office.

Additionally, legal team members in the MacLean, VA area mentioned that they were on more of an honor system and either worked remotely or on a voluntary hybrid basis.

Gabrielle Walker, Plaintiff's manager at one point at Adobe, worked fully remote.

Upon returning to work after the FMLA, noticeable changes developed in what appeared to be an effort to force or manage Plaintiff out of the company.

The sales team became even more aggressive with Plaintiff, Plaintiff was moved from his role supporting the Small and Medium Business sector to the Enterprise sector without consultation or buy in, a counterpart and the only remaining person in equal to Plaintiff's role supporting the Marketo product was given what appeared a promotion and headcount to support what would be his work load around the second business reporting quarter of 2021 (Feb – May).

Plaintiff when leading SMB was primarily tasked with all the deals and little to no support. Upon this promotion, Adobe somehow determined the SMB sector really required 2 JD and experienced members and a contracts administrator showing in fact Plaintiff was overworked, underpaid and under supported.

In addition to having to managing the entirety of the Enterprise level Marketo deals, empty promises that other employees were to be trained up on the Marketo product to help never materialized from 2019 until the last day of employment.

1. Plaintiff, in the continued effort to manage him out of the company or have him quit in frustration, was also assigned to supporting the procurement efforts of the company even though already having more than a full-time load of work amid record revenue and profits.
2. Again, after the FMLA leave and the disclosure of Plaintiff's disability status, Plaintiff made statements to his manager regarding his workload, level of pay, and the harassing work environment.
3. Plaintiff's manager Robin Foster brushed the complaints off and said in harsh and uncaring tone and in disbelieve of Plaintiff's claim that Plaintiff made $125,000 with a tone of shock indicated that was more than enough for him and the work he was doing.
4. The massive hours, complexity of work, and experience level would dictate in fact, this amount is under market and a fellow Marketo and Adobe employee, Matt Paquette, had even confirmed this in prior conversations with Plaintiff insinuating Plaintiff was well underpaid.
5. Apparently the ability to hire someone or a temp was not an option for the company as well.
6. Typically, associate attorneys at law firms make well above $125,000.00 that would handle these types of deals along with the hours, in fact some of them make as much as $300,000.00 a year, even though Plaintiff's experience is beyond that of an associate.
7. Abuse escalated, where Plaintiff was assigned to handle and account with JPMorgan Chase, the sales team even though notified by Plaintiff that he was located on the west coast would continually set meetings at hours that were unrealistic for Plaintiff to make, such as when Plaintiff would send out a document version for discussion to JPMC and the sales member at 2 am PST (yes, Plaintiff was working that late often), the sales team would then set meetings that were at 7 or 8 am PST the following morning without consulting Plaintiff on availability considering that was outside the window of availability the sales team was already notified that were outside Plaintiff's normal working hours window.
8. Adobe managers, Hylan Fenster especially, but Robin Foster and Alex Fuentes were notified of this bullying and attempt to sandbag Plaintiff and his reputation and did nothing.
9. Abuse escalated by sales team members, including in Q3 by Nicole Malley, where she started a fire storm within management claiming Plaintiff had not completed work on deal.

1. Plaintiff after dealing with a number of text messages and emails over what was supposed to be his time for lunch (which Plaintiff often had to work through) chewed up the time of Plaintiff and severely management team leaders for almost an hour, determined her complaints were completely unfounded and that Plaintiff had provided his required work product the day before and that Nicole Malley was on the email with said work product.

2. Almost immediately after that, Nicole Malley then proceeded to bring up another deal that Plaintiff was assigned to try and attack him on again that did not have merit which Plaintiff being attacked responded with an email that simple said to Nicole Malley to "Stop".

3. Rather then taking any of Plaintiff's previous requests for support and ending the harassment and bullying, Robin Foster (who was now VP of the Deals team) and his new manager Alex Feuentes did nothing to stop the continued abuse, harassment, and interruption of Plaintiff's ability to work.

4. Robin Foster even chastised Plaintiff for making an attempt to stop the non-sense of Nicole Malley.

5. No accommodations to support Plaintiff's working environment and disability were ever made even though requested multiple times (like the simple request by management to end the unnecessary emails).

6. During the course of all this Plaintiff attempted twice to set up vacation time, once in June or July of 2020 and again at the beginning of Sept 2021 and those boundaries of rest and recouperation were thwarted, first by the aggressive sales team, and then second by Alex Fuentes dropping a new requirement on Plaintiff to find a someone to cover for him which was never a requirement before which Plaintiff was then terminated shortly thereafter.

7. During the course of this, Plaintiff dealt with extended manifestations including migraine level headaches, severe stomach pains, pain in left arm, high blood pressure and hypertension, bouts of slurred speech even though Plaintiff gave up drinking in February of 2020, inability to sleep, exhaustion, years of severe depression, PTSD, to name a few.

8. Additionally, Plaintiff still has not been provided a travel reimbursement for a hotel on a work trip that exceeded $2,000 from January 2019 after several attempts with discussions of his management and the Adobe teams responsible for reimbursement.

## Causes of Action

Petitioner claims the following causes of action for common law and statutory claims, including but not limited to: Violation of ADA; Deceptive or Misleading Practices as to employees; Failure to Provide harassment free working environment; Fraud in representing to Plaintiff he had an unlimited vacation time plan but interfering with the ability to use it; Intentional Infliction of Emotional Distress; and Negligent Infliction of Emotional Distress.

## Request for Relief

Petitioner graciously requests the following relief from the court:

Damages for pain, suffering, and severe emotional distress and the additional causes of action above in the amount of one million dollars;

Damages for additional interest and fees and reduced value due to inflation that Plaintiff has incurred for failure of Defendants to reimburse Plaintiff;

Any additional Damages the court sees fit;

Punitive Damages for purposeful and blatant misconduct in the amount of five million dollars;

Attorney Fees and any other costs associated with this litigation that Plaintiff incurred including reimbursement for Plaintiff's time involved with having to bring suit;

And any other relief the court or jury may feel is just and appropriate.

Accordingly submitted:

Date: September 29, 2023          Sign Name: _____
                                  Print Name: Jason, Brent